AO 106 (Rev. 01/09) Application for a Search Warrant

E-FILED
Monday, 22 June, 2015 03:35:30 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. 15-mj- 6044 |
| IN THE MATTER OF THE SEARCH OF INFORMATION | ) |
| ASSOCIATED WITH USER ID: 100009493450607 THAT IS | ) |
| STORED AT THE PREMISES CONTROLLED BY FACEBOOK, INC. | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Northern_____ District of _____California_____ *(identify the person or describe property to be searched and give its location):* **See Attachment A.**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* **See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of _____18_____ U.S.C. § _2252(a)(4)(B)_ , and the application is based on these facts: The search is also related to violations of Title 18, U.S.C. Sections 2251, 2252, 2252A, 1470, 2256(a)(6), and attempts to violate these statutes. Please see the attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Scott Gamboe

_____
*Applicant's signature*

Scott Gamboe, SFO USSS
_____
*Printed name and title*

Sworn to before me and signed in my presence.   s/Jonathan E. Hawley

Date: 6/22/2015

_____
*Judge's signature*

City and state: Peoria, Illinois      JONATHAN E. HAWLEY, U.S. MAGISTRATE JUDGE
_____
*Printed name and title*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | ) | |
| INFORMATION ASSOCIATED WITH | ) | |
| FACEBOOK USER ID:  100009493450607 | ) | Case No. 15-MC- |
| THAT IS STORED AT THE | ) | |
| PREMISES CONTROLLED BY | ) | **Filed Under Seal** |
| FACEBOOK, INC. | ) | |

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR SEARCH WARRANT

I, SFO Scott Gamboe, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am a detective with the Peoria County Sheriff's Office and have been since June 1998.  I am also a Special Federal Officer through the sponsorship of the United States Secret Service, and a member of the United States Attorney's Office Central Illinois Cyber Crime Unit based in Peoria, Illinois. I have received extensive training in criminal investigations, computer crime investigations, computer forensic exams, identity theft, fraud, and child pornography investigations. I have conducted numerous investigations, state and federal, involving computer crimes, identity theft, fraud, and child pornography resulting in arrests and seizures. I have also been involved in the execution of numerous search warrants.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Possession, Receipt, Distribution, or Production of Child Pornography (18 USC §§ 2251, 2252, 2252A); Transfer of Obscene Materials To Children (18 USC § 1470); Grooming (18 USC §

2

2252A(a)(6)) have been committed by Arthur Wheeler III. There is also probable

cause to search the information described in Attachment A for evidence of these

crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5.      In 2011, Arthur Wheeler III, date of birth 10/25/1984, made contact

with a 13-year-old-female via Facebook.  Wheeler lived in Tazewell County, and

the female lived in Fulton County.  Wheeler drove to Fulton County.  He met the

girl and brought her back to Tazewell County, where they engaged in sexual

conduct.  For reasons unknown to Affiant, Wheeler was not charged with the

illegal sexual act with a minor in Tazewell County.  However, Fulton County

charged him with traveling to meet a minor in violation of 720 ILCS 5/11-26(a), a

Class 3 felony, a charge which resulted in a conviction and a sentence of

imprisonment of 42 months.  He is currently a registered sex offender.

6.      In May 2015, I was contacted by Detective Jeff Stolz of Pekin PD and

Agent Kerrie Englert of the Illinois State Police regarding new complaints against

Wheeler involving the exploitation of minors.  Agent Englert stated that with

regard to her investigation of Wheeler, she spoke to a person referred herein as

"JG", a 15-year-old female who lives in Astoria, IL.  JG said she met Wheeler on

Facebook around the beginning of March 2015.  JG told Wheeler she was 15, and

Wheeler said he was 21.  Wheeler requested that JG send nude pictures of herself to Wheeler.  JG sent Wheeler five nude images, including pictures of her breasts and vagina.  She sent them from her friends' phones and immediately deleted the pictures.  On five occasions, Wheeler sent JG a picture of a nude penis, but JG believed it was the same picture each time.  Around March 22, 2015, JG and her step-father rode with Wheeler to do a window cleaning job.  They stopped at a gas station, and while the step-father was pumping gas, Wheeler kissed JG and stuck his hand inside her pants, under her panties.

7.      Detective Stolz received two complaints regarding Wheeler.  Stolz spoke with persons referred to herein as "MG", a 16-year-old female from Pekin, IL, and "KK", a 17-year-old female from Manito, IL.  Both complained of receiving a mass text message from Wheeler, containing nude images of a young female.  The female in the pictures was identified and referred to herein as "HV", a 15-year-old female from Pekin, IL.  By reviewing message history on the phones of MG and KK, Stolz was able to determine that the images of HV were sent to 30 different cell phones.  Stolz was able to download KK's cell phone and locate the nude images of HV.  Both MG and KK have stated that Wheeler is repeatedly contacting them via Facebook and asking to have sex with them.

8.      On Friday, June 5, 2015, Wheeler arrived at the Tazewell County Courthouse seeking to obtain an Order of Protection against the family of a

person referred to herein as "EW".  EW is a 17-year-old female who lives in

Brookfield, Missouri.  According to Wheeler's sworn testimony before Judge

Mike Risinger, EW has a mental disability and functions with the mentality of a

12-year-old.  Wheeler testified that EW's family had threatened to come to Pekin

to do violence against Wheeler because he had been in communication with EW.

Wheeler stated that after communicating with EW for two weeks (May 10, 2015 –

May 23, 2015), Wheeler asked for pictures of her, and EW sent him nude pictures.

Those pictures were sent five days after Wheeler learned that EW was 17 years

old.  Wheeler stated that he "sent [the pictures] back to her" and told EW not to

send any more nude images.  However, Wheeler deliberately saved these images

to the "camera" area of his phone, thereby preserving them in the phone's

memory and preventing accidental deletion.  Wheeler showed these images of

EW's genitalia to Judge Risinger in open court during the hearing, testified that

he believed the nude images depicted the person of EW, and testified that he

received the images subsequent to learning that EW was a minor.

9.      Following the hearing, Wheeler allowed Detective Stolz to maintain

custody of the phone.  Stolz acquired a State search warrant for the data on the

phone, but limitations of the device prevented a successful download.  However,

the images were able to be viewed.  In addition to images that look the same or

substantially similar to the images received by KK (nude pictures of 15-year-old

5

HV), there are multiple images of a nude vagina, but without the female's face. The phone also contains a series of pictures that, based upon a review of the colloquy between Wheeler and the judge at the Order of Protection hearing, appear to be the female that Wheeler identified as 17 year-old EW.  The images of EW include close-up pictures of her vagina, masturbation by insertion of fingers into her vagina, and sexually explicit poses wherein EW's genitalia is exposed.

10.     On June 11, 2015, law enforcement officers searched Wheeler's residence in South Pekin, Illinois, pursuant to a federal search warrant. Wheeler was present during the search and was advised that he was not under arrest. Wheeler was further advised of his Miranda rights and agreed to be interviewed. Wheeler admitted to the communications between himself and EW that were discussed in open court in Tazewell County and admitted to receiving nude images of EW, a person he knew to be a minor.  During the interview, Wheeler told Affiant that EW initiated contact with him through a friend request on Facebook in early May 2015.

11.     As evidenced above, Wheeler has used Facebook as a primary means of meeting and interacting with underage females.  On May 1, 2015, Special Agent Kerrie Englert of the Illinois State Police sent a preservation order for this account.  Subsequently, I sent a preservation order for the account on June 18, 2015.

12.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

13.    Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

14.    Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which

7

highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

15.    Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

16.    Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also

8

includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

17.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

18.     Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.  These chat communications are stored in

9

the chat history for the account.  Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

19.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

20.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

21.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

22.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

23.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

24.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

25.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any

11

credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

26.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was

12

accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

27.    Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and

13

information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

28.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

29.    Based on the forgoing, I request that the Court issue the proposed search warrant.

30.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court, the United States District Court for the Central District of Illinois is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

14

31.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

32.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,
s/Scott Gamboe

Scott Gamboe
Special Federal Officer
United States Secret Service

Subscribed and sworn to before me
on June 22, 2015:
s/Jonathan E. Hawley

Jonathan E. Hawley
UNITED STATES MAGISTRATE JUDGE

15

## ATTACHMENT A

*Property to be searched*

This warrant applies to information associated with the Facebook user ID Arthur Wheeler, User ID 100009493450607, that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

16

## ATTACHMENT B

*Particular Things to be Seized*

## I.    Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the user ID listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, sent and received pictures and videos, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan" of;

18

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the account;

(l)     All information about the user's access and use of Facebook
Marketplace;

(m)    The types of service utilized by the user;

(n)     The length of service (including start date) and the means and
source of any payments associated with the service (including any
credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy
settings for individual Facebook posts and activities, and all records
showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and
any person regarding the user or the user's Facebook account,
including contacts with support services and records of actions
taken.

## II.     Information to be seized by the government

All records on the Device described in Attachment A that relate to
violations of Possession, Receipt, Distribution, or Production of Child
Pornography (18 USC §§ 2251, 2252, 2252A); Transfer of Obscene Materials To
Children (18 USC § 1470); Grooming (18 USC § 2252A(a)(6)), including, for each

19

user ID identified on Attachment A, information pertaining to the following
matters:

> (a) Receipt, distribution, storage, or solicitation of illicit images of
> females who have not reached the age of 18, or chat threads between
> Wheeler and females under the age of 18 whose contents are of a
> sexual nature;

> (b) Evidence indicating how and when the Facebook account was
> accessed or used, to determine the chronological and geographic
> context of account access, use, and events relating to the crime under
> investigation and to the Facebook account owner;

> (c) Evidence indicating the Facebook account owner's state of mind as it
> relates to the crime under investigation;

> (d) The identity of the person(s) who created or used the user ID,
> including records that help reveal the whereabouts of such
> person(s).

> (e) The identity of the person(s) who communicated with the user ID
> about matters relating to Possession, Receipt, Distribution, or
> Production of Child Pornography (18 USC §§ 2251, 2252, 2252A);
> Transfer of Obscene Materials To Children (18 USC § 1470);

20

Grooming (18 USC § 2252A(a)(6)) including records that help reveal their whereabouts.